UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREG HOLLAND,<br><br>                 Plaintiff,<br><br>     v.<br><br>THOMAS MATOS, NANCI MATOS and<br>BESTLIFE GIFTS LLC,<br><br>                 Defendants. | 18 Civ. 6697<br><br>**COMPLAINT** |

Plaintiff Greg Holland ("Holland"), for his complaint against defendants Thomas and Nanci Matos (together, the "Matoses") and BestLife Gifts LLC ("BestLife Gifts"), alleges as follows:

## NATURE OF THE ACTION

1. Holland brings this action to remedy the contractual and fiduciary breaches committed by his former business partners, defendants Thomas and Nanci Matos, and their company, defendant BestLife Gifts LLC. Through deceit and intimidation, the Matoses stole Holland's investment and interest in Ministry Ideaz LLC ("Ministry Ideaz"), as well as the company's inventory and cash. The Matoses then used Ministry Ideaz's inventory and cash to establish their own competing business.

2. Holland and the Matoses formed Ministry Ideaz as a New York limited liability company in May 2017 so that Holland could open his first brick and mortar location in the United States. Holland was already a successful entrepreneur selling religious-themed leather and paper goods through an online website called Ministry Ideaz in Ecuador where he lived. As his online business grew, Holland sought U.S.-based partners and was introduced to the Matoses through a fellow member of the Jehovah's Witness church. Because he was a Canadian citizen

living in Ecuador, Holland entrusted the Matoses with managing all aspects of Ministry Ideaz and its store.  However, the Matoses breached their fiduciary duties as members and managers and intentionally and deceitfully misappropriated over $150,000 in cash.  Worse still, eight months into their business relationship, the Matoses formed a separate entity, BestLife Gifts LLC, and threatened Holland with destroying his pre-existing online business by publishing his personal and marital troubles to the nearly 300,000 Ministry Ideaz (Ecuador) customers that he had amassed since 2002 unless Holland relinquished his interests in Ministry Ideaz to the Matoses.

      3.      Fearing that the Matoses would ruin his livelihood and his relationship with his family and his church, Holland signed a purported agreement whereby he relinquished his 90% interest in Ministry Ideaz and the store's $150,000 inventory in favor of the Matoses in exchange for their flimsy promise to continue to forward online orders from Ecuador to customers in North America.  Even before they coerced Holland into signing this "agreement," the Matoses held a secret "special meeting" of Ministry Ideaz's members where they alone (representing only 10% of the company) voted to dissolve Ministry Ideaz without Holland's knowledge at the time.  Holland neither attended the meeting nor voted for the company's dissolution.  Nonetheless, and presumably based on the void "agreement," Mr. Matos filed articles of dissolution with the New York Department of State claiming that the company was dissolved by agreement of the majority of its members.

      4.      Today, the Matoses operate BestLife Gifts LLC from Ministry Ideaz' storefront, selling its inventory, and using, *inter alia*, its office equipment, telephone numbers and customers.

## THE PARTIES

5. Plaintiff Greg Holland is a Canadian citizen and is domiciled in British Columbia, Canada.

6. Upon information and belief, defendant Thomas Matos is a United States citizen domiciled in Pine Bush, New York.

7. Upon information and belief, defendant Nanci Matos is a United States citizen domiciled in Pine Bush, New York.

8. Upon information and belief, BestLife Gifts LLC is a New York limited liability company formed on or about February 21, 2018, with an address at 2412 Route 52, Suite 10, Pine Bush, New York, and whose sole members are Thomas and Nanci Matos.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff Greg Holland is a citizen of Canada where he is also domiciled. Defendants Thomas and Nanci Matos are United States citizens domiciled in New York. BestLife Gifts is a New York limited liability company, whose sole members, Thomas and Nanci Matos, are citizens of New York. Further, the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendants Thomas and Nanci Matos reside in this district, BestLife Gifts LLC is domiciled in this district and a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

11. Plaintiff is an entrepreneur who founded Ministry Ideaz (Ecuador) in 2002 as an online business operating from his then home in Ecuador. Ministry Ideaz (Ecuador) manufactured and sold religious-themed leather and paper products to the Jehovah's Witness community.

12. In early 2017, Holland sought to open a brick and mortar store to sell his products directly to walk-in customers. Holland also sought to establish a permanent address in the United States from which he could forward and process Ministry Ideaz (Ecuador) online orders and returns to customers in the United States and Canada.

13. In or around April 2017, Holland was introduced to the Matoses through a mutual friend. Holland spoke with the Matoses and, based on his trust of fellow members of the Jehovah's Witness faith, agreed to partner with them to open a storefront in the United States.

14. To that end, and at Thomas Matos' suggestion, on or about May 30, 2017, Holland and the Matoses formed Ministry Ideaz LLC as a New York limited liability company which would open a storefront located near the Jehovah's Witness headquarters and the Matoses home in Pine Bush, New York.

15. On or around that same date, Holland and the Matoses signed an operating agreement for Ministry Ideaz (the "Operating Agreement") providing that Holland held a "90% interest in profit and loss" of the company and the Matoses jointly held the remaining "10% in profit and loss" of Ministry Ideaz. A true and correct copy of the Operating Agreement is annexed hereto as Exhibit 1.

4

16. Section 3 of the Operating Agreement provides that: "The general management of the Company and the day-to-day operation shall be under the direction of THOMAS MATOS and NANCI MATOS[.]" Section 4 of the Operating Agreement provides that:

> The books and records of the Company shall be maintained by THOMAS MATOS and NANCI MATOS at 23 Sunset Trail, Pine Bush, New York 12566. All checking accounts shall require the signature of THOMAS MATOS, NANCI MATOS or GREG HOLLAND who shall make all normal expenditures for day-to-day operations and for the payment of normal operating expenses, including but not limited to utility bills, taxes, etc.

17. From May 2017 through July 3, 2017, Holland wired over $40,000 to the Matoses so that they could establish the Pine Bush store, hire an attorney to form the LLC, and lease and build out the store and office equipment.

18. Thereafter, Holland wired an additional $190,000 to a Ministry Ideaz bank account established and controlled by the Matoses to cover operating expenses from July 2017 through March 2018. Additionally, Holland shipped approximately $250,000 worth of inventory from Ecuador to be sold in the Pine Bush store. The inventory was expected to sell at retail for three times that amount, or $750,000.

19. On or about July 3, 2017, Defendants opened the Pine Bush store to the public. Due to its proximity to the international headquarters of the Jehovah's Witnesses and because of Ministry Ideaz's (Ecuador) established fifteen year reputation selling religious-themed products, the store became successful in short order.

20. In its first month (July 2017) the Ministry Ideaz store generated $38,837 from in-store credit card sales. From August through December 2017, the store grossed over $250,000 from credit card sales alone.

5

21. Throughout this period, Holland and his wife and children became very close to the Matoses. The Matoses endeared themselves to the Holland family by acting as surrogate parents for the Hollands and grandparents to their two young children. They showered the Hollands' two toddlers with gifts and hosted the Hollands during an extended visit to Pine Bush in August and September 2017.

22. Meanwhile, and despite Ministry Ideaz's early success, credit card sales began to drastically decline in 2018. From January 2018 through March 2018 the store only registered approximately $21,600 in credit card sales, a dramatic decrease from the previous five month's quarter-million-dollar gross credit card sales.

23. When Holland or his wife asked about this dramatic decline in sales, the Matoses attributed the decline to slow sales traffic but were unable to provide more definite responses.

24. However, as Holland later discovered, rather than tending to Ministry Ideaz's store, the Matoses were secretly scheming to steal Holland's entire investment in Ministry Ideaz and rebrand the store as their own.

25. Upon information and belief, on or about February 21, 2018, the Matoses formed BestLife Gifts LLC as a New York limited liability company. New York Department of State records show that BestLife Gifts was located at Ministry Ideaz's storefront in Pine Bush, New York at the time of its formation, and remains there today.

26. Next, the Matoses capitalized on Holland's personal and marital troubles to force him to sign over his interest in Ministry Ideaz to the Matos. Specifically, in late 2017, due to an extramarital affair, Holland became estranged from his wife and his church. In early 2018,

Holland's wife returned to Canada with the couple's children.  Holland followed but remained estranged from his wife.

27. From December 2017 through March 2, 2018, the Matoses spoke to Holland's wife under the guise of offering emotional support during her estrangement from her husband. However, in fact, the Matoses were conducting a stealth campaign of psychological warfare against Holland so that they could continue pillaging Ministry Ideaz.  In their conversations, the Matoses tried to persuade Holland's wife to divorce her husband, seek sole custody of their two toddlers and extract a financial settlement from Holland.  At the same time, the Matoses spoke regularly with Holland and offered their feigned emotional support hoping that he would focus on his marital issues rather than suspect the ongoing theft that his "surrogate parents" − the Matoses − were perpetrating on Holland's investment.  Indeed the Matoses assured Holland that he need not worry about business because the store was in their "good hands."

28. Then, without warning, on March 2, 2018, Thomas Matos sent Holland an e-mail terminating their relationship:

> [W]e are severing ties!…The store sign has been removed, the lease has ended, utilities, phones and internet canceled and all Clovers shut down.…
> Bear in mind that the store is gone, our conversation must focus on division of assets and moving forward.

29. As an attachment to his e-mail, Mr. Matos provided a copy of a "Special Meeting" of Ministry Ideaz LLC held on March 2, 2018 at the Matoses' home.  With only Thomas and Nanci Matos present (representing only 10% of the company's ownership), they approved the following resolutions:

1) Payment of Quarterly Sales Tax;
2) Disconnect [*sic*] of utilities;

7

      3) Terminate "Ministry Ideaz LLC" lease;
      4) Dissolution of Ministry Ideaz LLC; and
      5) Storage of Ministry Ideaz assets.

A true and correct copy of the March 2, 2018 e-mail and its attachment is annexed hereto as Exhibit 2

      30.      Holland was shocked by Mr. Matos' e-mail, particularly since Holland was never notified of the "Special Meeting." He did not participate in the Special Meeting or vote for its resolutions, including the dissolution of Ministry Ideaz LLC. Indeed, before the March 2, 2018 e-mail, Holland had no indication that the Matoses intended to sever their relationship with him or, purportedly, with Ministry Ideaz.

      31.      Thereafter, on or about March 5, 2018, Mr. Matos and Holland spoke by phone. Mr. Matos threatened Holland by telling him that he would contact the nearly 300,000 Ministry Ideaz (Ecuador) customers which Holland had amassed since 2002 and tell them about his recent personal and marital troubles. Mr. Matos also told Holland that he would not process approximately one thousand online orders which the Matoses had received and promised to send to Ministry Ideaz's online customers and which were valued at up to $30,000. Mr. Matos also intimated that he would use his relationship with Holland's wife to persuade her to file concocted criminal charges against Holland in Canada.

      32.      Mr. Matos, however, offered Holland a deal: he wouldn't contact Holland's customers and would process all of Ministry Ideaz outstanding and future online orders through the end of 2018 if Holland signed over his entire interest in Ministry Ideaz LLC to Thomas and Nanci Matos.

33.     Holland feared that Mr. Matos would follow through on his threats. He feared that his livelihood, based on his sixteen-year-old online business, would be ruined if Mr. Matos delivered on his promise to contact Holland's 300,000 customers. Holland also feared he would lose the up to $30,000 in online orders sitting in the Pine Bush store. And he feared that Mr. Matos would continue to use his relationship with Holland's wife to drive a wedge between Holland and his family.

34.     With the justified belief that his business and fortune were in peril, Holland acquiesced to Mr. Matos' extortionate demands and on March 5, 2018, signed a one-page agreement drafted by Mr. Matos stating the following:

> It is agreed that Ministry ldeaz LLC is dissolved.
>
> Regarding the office equipment and existing Ministry ldeaz LLC inventory Greg Holland agrees to transfer his portion of ownership to Thomas Matos and Nanci Matos.
>
> In return Thomas and Nanci Matos agree to accept and process Ministry ldeaz online sales packages for a period of time ending on Dec. 31st 2018.
>
> It is also agreed that as further compensation for existing inventory Thomas and Nanci Matos will also accept, process and deposit return checks for Ministry ldeaz into an existing TD Bank account accessible Greg Holland. [*sic*]
>
> Thomas and Nanci Matos also agree to direct any incoming calls searching for Ministry ldeaz Online business to 1-877-446-0784.
>
> As of the signing of this agreement any money entering the said TD account will be the sole possession of Greg Holland and Ministry Ideaz.

A true and correct copy of the March 5, 2018 Agreement is annexed hereto as Exhibit 3.

35. This episode caused Holland immense stress and exasperated the symptoms of his Crohn's disease. As a result, Holland became ill, suffered serious bleeding and was hospitalized in Canada because of the stress-induced symptoms.

36. Pursuant to Ministry Ideaz's Operating Agreement, the Matoses were managing members entrusted with Ministry Ideaz's books and records and its tax filings. In fact, the Matoses controlled Ministry Ideaz's inventory and finances because Holland was based in Ecuador and later Canada. As such, he relied exclusively on the Matoses to manage Ministry's Ideaz's finances and make accurate tax filings.

37. By mid-March, Holland and his wife reconciled and Holland began to recover from the stressed-induced hospitalization provoked by the Matoses' misdeeds. Holland and his wife also began to grasp the extent of the Matoses' deceit and ultimately enlisted counsel to address their actions described herein.

38. On July 9, 2018, Holland, through counsel, sent a letter to the Matoses demanding that they (1) immediately cease selling Ministry Ideaz's inventory and preserve its assets; (2) produce New York Department of Labor wage reports; (3) provide Holland access to Ministry Ideaz's books, records and bank accounts, including the company's account on Clover.com, a "point of sale" registrar that logs all cash and credit card transactions; (4) account for misappropriated funds; and (5) delete a Google business account which they had commandeered and changed to reflect BestLife Gifts' information. The Matoses were given until July 16, 2018 to respond to Holland's letter.

39. Although, on or about July 12, 2018, Holland received an e-mail from Clover.com granting him access to Ministry Ideaz's account, neither Thomas nor Nanci Matos responded to Holland's letter.

40. Upon reviewing the Clover.com transactions, Holland discovered that from July 2017 through early March 2018, Ministry Ideaz made over $60,000 in cash sales which the Matoses never deposited in Ministry Ideaz's bank account and which they misappropriated.

41. Holland also reviewed the limited records in his possession and discovered that the Matoses failed to account for or repay at least $90,000 in funds wired from Holland to the Ministry Ideaz's bank account which was controlled by the Matoses.

42. Upon further review of his existing and newly available records, and Ministry Ideaz's filed 2017 tax return, Holland also realized the Matoses made multiple false declarations on Ministry Ideaz's 2017 tax returns. For instance, the Matoses declared that they received $54,768 in management fees even though they were paid much more. The Matoses also underpaid New York sales tax in the first quarter of 2018 by declaring approximately $18,000 less in gross sales than those which were actually generated by the store. Upon information and belief, other portions of Ministry Ideaz's tax returns are false or omitted, but Holland is unable to amend the tax return without full access the books and records which are in the Matoses sole possession and control.

43. Finally, on or about March 8, 2018, Mr. Matos caused a certificate of dissolution to be filed with the New York Department of State listing the event giving rise to the dissolution as "the vote or written consent of a majority in interest of the members of the limited liability

company." A true and correct copy of Ministry Ideaz's articles of dissolution is annexed hereto as Exhibit 4.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract Against Defendants Thomas Matos and Nanci Matos)**

44. Plaintiff incorporates by reference the allegations in paragraphs 1 through 43.

45. Pursuant to the Operating Agreement, the Matoses were required to manage Ministry Ideaz's day-to-day operations, maintain all books and records and make normal expenditures and pay taxes.

46. The Matoses breached the Operating Agreement by misappropriating funds, failing to maintain proper books, records and wage reports, and failing properly to pay taxes attributable to Ministry Ideaz.

47. Plaintiff has suffered the loss of his investment by reason of such breaches and has been damaged in the sum of not less than $300,000. The Matoses breaches have further damaged plaintiff because he took no distributions from the company in light of the Matoses conduct. Additionally, plaintiff has been irreparably damaged by the loss of the benefits of Ministry Ideaz's storefront, the goodwill he garnered with his customers over sixteen years in business and demands restitution in a further amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duties Against Defendants Thomas Matos and Nanci Matos)**

48. Plaintiff incorporates by reference the allegations in paragraphs 1 through 47.

49. As managing members, the Matoses owe Holland and Ministry Ideaz fiduciary duties, including the duty of loyalty, to act in the best interests of the company and to not waste or divert company assets.

50. From the formation of the company, the Matoses breached their duties by misappropriating company funds for their own benefit.

51. Plaintiff has demanded that the Matoses remedy their breaches. The Matoses failed to respond.

52. As a result of these breaches, plaintiff suffered damages of no less than $300,000.

### THIRD CLAIM FOR RELIEF
### (Breach of Manager Duties Against Thomas Matos and Nanci Matos)

53. Plaintiff incorporates by reference the allegations in paragraphs 1 through 52.

54. The Matoses have violated Section 409 of the New York Limited Liability Company Law ("NY LLCL") by failing to perform their duties as managers in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

55. Plaintiff has demanded that the Matoses remedy their breaches. The Matoses failed to respond.

56. Plaintiff has been irreparably harmed by the wrongful acts of the Matoses and demands that the Matoses be removed as managers of Ministry Ideaz, be required to account for the losses and damages that Plaintiff has incurred, and be directed to restore to Ministry Ideaz and plaintiff the amount of their respective losses, as established at trial.

### FOURTH CLAIM FOR RELIEF
### (Production of Books and Records Against Defendants Thomas Matos and Nanci Matos)

57. Plaintiff incorporates by reference the allegations in paragraphs 1 through 56.

58. NY LLCL section 1102(b) entitles members to examine the books and records of a company.

59. On July 9, 2018, Holland sent a letter to the Matoses demanding an inspection of Ministry Ideaz's books and records. To date, the Matoses failed to respond.

60. Holland seeks an order requiring the Matoses to produce the documents previously requested by Holland.

## FIFTH CLAIM FOR RELIEF
### (Accounting Against Defendants Thomas Matos and Nanci Matos)

61. Plaintiff incorporates by reference the allegations in paragraphs 1 through 60.

62. The Matoses have breached their fiduciary duties to Holland by failing to account for their intake and expenditure of company funds.

63. Holland seeks an order requiring the Matoses to make a full accounting of Ministry Ideaz, including all funds received by the company and expenses incurred by the company since its formation.

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition Against all Defendants)

64. Plaintiff incorporates by reference the allegations in paragraphs 1 through 63.

65. The Matoses stole the property of Holland and Ministry Ideaz and formed a new company which is located at the same location, uses the same phone number and directly competes with Ministry Ideaz.

66. As a result of their conduct, defendants unfairly compete with Ministry Ideaz.

67. Consequently, Ministry Ideaz has been damaged in an amount to be proven at trial, but in no event less than $1 million.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment)

68. Plaintiff incorporates by reference the allegations in paragraphs 1 through 67.

69. The March 5, 2018 "agreement" between Holland and the Matoses was procured by duress, undue influence and extortion.

70. Accordingly, Holland seeks a determination that the March 5, 2018 "agreement" is null and void along with the Ministry Ideaz articles of dissolution.

## **PRAYER FOR RELIEF**

**Wherefore**, plaintiff respectfully demands a judgment against defendants as follows:

(A) On the first, second, third and sixth claims for relief, awarding damages in an amount to be determined at trial, but in no event less than $300,000.

(B) Ordering the Matos defendants to produce all books and records of Ministry Ideaz LLC.

(C) Declaring the March 5, 2018 Agreement to be null and void along, with the Ministry Ideaz articles of dissolution.

(D) Entering an injunction:

 a. Restraining and prohibiting all defendants from selling, moving or otherwise affecting all inventory, cash, sales proceeds (including those contained in bank accounts under any of the defendants' names), office equipment which rightfully belongs to Ministry Ideaz;

 b. Restraining and prohibiting the Matoses from paying or taking any management fees pending the outcome of the litigation;

 c. Restraining and prohibiting the Matoses from taking or receiving any monies from the sale of assets or inventory currently held by BestLife Gifts LLC;

15

      d. Restraining and prohibiting the Matoses from selling, transferring or moving assets belonging to BestLife Gifts LLC;

      e. Directing the Matoses to account for all sales effected by Ministry Ideaz and BestLife Gifts; and

(E)     Such other relief as the Court may deem just and proper.

Dated: New York, New York
      July 25, 2018

                                          KENT, BEATTY & GORDON, LLP

                                          */s/ Jack A. Gordon*
                                          Jack A. Gordon
                                          Joshua B. Katz
                                          Luis F. Calvo
                                          Eleven Times Square
                                          New York, New York 10036
                                          (212) 421-4300
                                          jag@kbg-law.com
                                          jbk@kbg-law.com
                                          lfc@kbg-law.com
                                          *Attorneys for Plaintiff*
                                          *Greg Holland*