```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   GREG HOLLAND,

4                   Plaintiff,

5        -against-                    18 Civ. 6697

6   THOMAS MATOS, NANCI MATOS and
    BESTLIFE GIFTS, LLC,
7
                    Defendants.
8
    ------------------------------------x
9

10                              United States Courthouse
                                White Plains, New York
11
                                August 12, 2019
12

13

14
                        HON. JUDITH C. McCARTHY,
15                              US Magistrate Judge

16

17

18
    KENT BEATTY & GORDON LLP
19          Attorneys for Plaintiff
            Eleven Times Square
20          New York, New York 10036
    BY:  JOSHUA B. KATZ
21

22
    JACOBOWITZ & GUBITS
23          Attorneys for Defendants
            548 Broadway
24          Monticello, New York 12701
    BY:  ROBERT M. LEFLAND
25
```

Angela O'Donnell, RPR, 914-390-4025

```
 1              THE CLERK:  In the matter of Greg Holland versus

 2   Thomas Matos.

 3              Counsel, please state your appearances for the

 4   record.

 5              MR. KATZ:  Your Honor, for the plaintiff it's Josh

 6   Katz from Kent, Beatty & Gordon.

 7              THE COURT:  Good morning, Mr. Katz.

 8              MR. KATZ:  Good morning.

 9              MR. LEFLAND:  Your Honor, for the defendants, it's

10   Robert M. Lefland from Jacobowitz & Gubits.

11              THE COURT:  Good morning, Mr. Lefland.

12              MR. LEFLAND:  Good morning, your Honor.

13              THE COURT:  Counsel, you can be seated, but when

14   addressing the Court, please stand.

15              Okay, so this is a -- was a request made by

16   defendants for a premotion conference to quash or modify some

17   subpoenas.  This is docket 30.

18              The subpoenas were third-party subpoenas issued by

19   plaintiffs on Safe & Sound Storage, Steven Chapman.  I think

20   it's Pax 10, Apple Valley Signs.  I think those are them.  Yes.

21              So the first -- I want to hear from defendants.  I

22   have reviewed the letters.  There was also opposition to this

23   on docket 31.

24              Then there's -- also plaintiffs have written

25   regarding defendants' ongoing failure to produce records and
```

1   that was docket 33.  We're going to hear that today.

2          And there's opposition to that, which is docket 34.

3          So I'd like to start with docket 30, which is

4   regarding the conference to, request for a conference to quash

5   or modify subpoenas.  I'd also like to start first with Steve

6   Chapman, because that one I can't tell if there is a dispute.

7          MR. LEFLAND:  Your Honor, I was speaking with

8   Mr. Katz before you took the bench and I just want to put this

9   out there for you.

10          My clients, in speaking with them last week and in

11   receiving the document over the weekend, have indicated to me

12   that between my legal bill and their other financial

13   situations, they are getting ready to declare bankruptcy.  This

14   case has taken an incredible toll on them financially.  I

15   expect that either there will be the bankruptcy filing or I

16   will be making a motion to be relieved.

17          The depositions I won't address right now.  The

18   subpoenas I will, if you like.

19          My concern with the subpoenas was obtaining personal

20   banking information of my clients and also the issue of getting

21   documents from the time after the filing of the summons and

22   complaint.  It wasn't an objection to documents before that,

23   and it wasn't an objection to anything else that they were

24   asking for, and I wasn't objecting to the deposition of

25   Mr. Chapman.

1          I was curious as to why they were only asking for

2    documents for him and not serving him with a subpoena to

3    testify, but they did subsequently do that and he is ready to

4    testify.  We picked a date of September 12 for him to testify.

5          But that was my objection, and that's what I included

6    in a letter to Mr. Calvo and subsequently to the Court.  The

7    Court has already ruled that their personal banking information

8    is not to be provided, and I felt like this was an attempt to

9    get through the back door what they couldn't get through the

10   front door.

11          THE COURT:  Okay.  Mr. Lefland.

12          MR. LEFLAND:  No, that's --

13          THE COURT:  I mean Mr. Katz, I'm sorry.

14          Thank you, Mr. Lefland.

15          MR. KATZ:  Your Honor, one point I have, Safe & Sound

16   has already responded to the subpoena and we provided those

17   documents to Mr. Lefland last week and I didn't see anything

18   that looked like personal banking information.  So I think that

19   objection is moot but Mr. Lefland can --

20          THE COURT:  Mr. Lefland.

21          MR. LEFLAND:  I did see some documents, and since

22   Mr. Katz mentioned it, I appreciate him refreshing my

23   recollection.  There was one document that I pointed out to

24   Luis, who is on vacation this week, that was submitted, I

25   believe, to the Court, filed with the Court, which was a check

1    containing banking information of the business Ministry Ideaz

2    which was unredacted.

3             I asked Luis to please submit a redacted check, and

4    as far as I know, that hasn't happened.  Mistakes happen.  I

5    understand that, but this is just some of it we were looking --

6             THE COURT:  And you mean banking information as in it

7    had the banking routing number and the bank account number and

8    the bank?

9             MR. LEFLAND:  Precisely.  The bank is the bank.  We

10   all know who the bank is, and it's been on other checks, and

11   there are other checks that he submitted that were, in fact,

12   redacted.  But you're right, your Honor, there's one with a

13   routing number and the bank account number.

14            MR. KATZ:  Your Honor, that account is -- it's my

15   client's business.  It's his account and the account has been

16   closed for a long time.

17            It's true we redacted, I think, two of them.  We

18   missed one redaction and I understand Mr. Calvo has been

19   speaking with the ECF clerk's office to figure out the best way

20   to fix that.

21            But given the fact that it's my client's account and

22   it's closed, we don't see this as being an emergency situation.

23            THE COURT:  Okay.  So I'm not going to deal with the

24   Safe & Sound subpoena.  It's been responded to and it doesn't

25   sound like it had any objectionable material that needed to be

1    clawed back; is that accurate?

2              MR. LEFLAND:  That is accurate.  Yes, so my letter to

3    the Court was written when the subpoenas, as far as I knew --

4              THE COURT:  No, no.  I understand.  But now that

5    Safe & Sound is done, so the Safe & Sound and that there was no

6    documents in there that need to be clawed back.

7              MR. LEFLAND:  That's right.

8              THE COURT:  Okay.  So Safe & Sound, the issue

9    regarding the Safe & Sound, the issue regarding Mr. Chapman,

10   those two subpoenas, I'm not going to address -- those are, I

11   would assume that, Mr. Lefland, that those -- the motion to

12   quash them is withdrawn on those --

13             MR. LEFLAND:  Well, I still have an objection to

14   Mr. Chapman using documents from the time of the filing of the

15   summons and complaint to the present.  That was part of the

16   subpoenaed records.

17             THE COURT:  Okay.  So we'll deal with that.

18             So you want to be heard on that, Mr. Katz?

19             MR. KATZ:  Yes, your Honor.

20             Mr. Chapman is a former employee of my client who

21   switched over to work for the defendants' business.  The

22   documents that we seek from him are communications with the

23   defendants or the plaintiff regarding the two businesses that

24   are at issue here.

25             It seems to me that if Mr. Chapman is communicating

1   with the defendants about Ministry Ideaz and Mr. Holland and

2   the sort of ongoing issues that we're complaining about in the

3   complaint, those are relevant.  There's nothing special about

4   the date we filed.

5          We're alleging that essentially right up until we

6   filed suit, they misappropriated our entire business, took

7   about $400,000 in cash and assets, and they're currently in the

8   process of selling that inventory.  So this is -- we're not

9   suing over something that happened in the past and it's over.

10  We're suing that something is ongoing.

11         THE COURT:  Mr. Katz, there's two requests for

12  production of documents; correct?

13         MR. KATZ:  In Chapman?  Yes.

14         THE COURT:  Number one, all communications, you, that

15  would be a reference to Mr. Chapman, and Thomas Matos from

16  May 2017 to present regarding Greg Holland, Jade Holland,

17  Ministry Ideaz, or BestLife Gifts, and the second one is all

18  communications between you and Nanci Matos from May 27 to

19  present, regarding Greg Holland, Jade Holland, Ministry Ideaz

20  or BestLife Gifts.

21         Can you explain to me why those are not overbroad?

22         MR. KATZ:  Because the only thing they would be

23  talking about was the issues at issue in this lawsuit.

24         THE COURT:  You don't have any idea of that.  How do

25  you know that?

1          MR. KATZ:  Well, he was a Ministry Ideaz employee up

2     until --

3          THE COURT:  Yes, but how do you know that's the only

4     thing he was talking about?  Why is this not overbroad?

5          You have not limited it to communications regarding

6     this case.  On its face, it's overbroad.

7          What if he was talking about a trip because they had

8     a personal relationship and they were going to do something?

9          What if they were talking about something that had to

10    deal with, you know, something that had nothing to do with this

11    case?

12          Why do you have a right to that?

13          MR. KATZ:  If there is something like that, then they

14    don't have to produce that, but my view is he -- my

15    understanding is they don't have a personal relationship.  He

16    was an employee of our company and then he became an employee

17    of their company.

18          THE COURT:  Okay, Mr. Lefland, I've narrow it to just

19    issues relating to this case, why you want it narrowed even

20    more?

21          MR. LEFLAND:  It will be hard for Mr. Chapman, who

22    I'm not representing at this time, so I don't know that I can

23    speak for him --

24          THE COURT:  You're speaking on behalf of your client

25    here because you're the one who wants to move to quash this

1  subpoena.

2       MR. LEFLAND:  Yes.  As far as Mr. Chapman is

3  concerned, I don't know that he's in a position to separate

4  what is relevant to this case or what is not relevant to the

5  case.  There have no doubt been discussions between my clients

6  and him regarding this case, and I suppose that the plaintiff

7  is entitled to that.

8       THE COURT:  Yes, I don't see why that would be

9  privileged.

10      MR. LEFLAND:  Right.  But, again, insofar as putting

11  the burden on Mr. Chapman to figure out what is relevant and

12  what isn't, I would ask that counsel be directed to produce a

13  narrow subpoena identifying precisely what it is that they're

14  asking for.

15      THE COURT:  Yes, but he doesn't know what documents

16  exist or not.  He wants, if there's been any communications

17  relating to the lawsuit that he brought, he wants to know about

18  it.  Relating -- if this is a former employee of theirs, and

19  now a current employee, and the whole issue has got to do with

20  misappropriation of funds and product, then his testimony and

21  what he knows about that is relevant.

22      MR. LEFLAND:  I would just ask that it be narrowed

23  slightly further so that there is -- so that Mr. Chapman

24  doesn't provide information that my client has relayed that has

25  come from me or --

1          THE COURT:  Unfortunately, Mr. Lefland, if your

2     client has relayed information that has come from you to

3     Mr. Chapman, he's waived the privilege.

4          MR. LEFLAND:  Well, Mr. Chapman is still an employee

5     of Mr. Matos.  So they can discuss the case under that purview

6     and perhaps at my direction and that would still be privileged.

7          And I'd like to add one other thing, your Honor, to

8     address what Mr. Katz has said.  My client is not selling

9     anything that belongs to Mr. Holland's company.  He sent me a

10    list over the weekend of everything that has been put into

11    storage that he will gladly give back to Mr. Holland.  Again,

12    just something to put out there.

13         So the claim that merchandise is being sold is

14    inaccurate at best.

15         THE COURT:  You know you're not representing him as

16    an individual, but if he's an employee of the company, don't

17    you -- why is this -- why are these not documents that you're

18    not getting yourself and providing to Mr. Katz?

19         If this is an employee of the company, and he's got

20    documents that may be related to this lawsuit but also the

21    company, why wouldn't this be something that you would be

22    producing?

23         MR. LEFLAND:  They may have already been produced.

24    Conversations between my client and Steve Chapman, I believe,

25    had been asked for and have probably been provided, if they've

Angela O'Donnell, RPR, 914-390-4025

1    been asked for.

2           Everything -- everything seems to be electronic

3    communications.  There's very little in the way of handwritten

4    communications.  It's all electronics.  So that has been

5    provided.  They served Mr. Chapman directly.  They didn't --

6    I'm sorry.

7           They sent it to -- they sent it.  They said would I

8    accept it, and I said, yes, and I sent it on to Mr. Chapman.

9           THE COURT:  Mr. Katz, do you have any problem with

10   Mr. Lefland gathering together, getting the documents from

11   Mr. Chapman, and producing them to you?  If there's anything

12   that he feels is privileged, he'd have to produce a privilege

13   log.

14          MR. KATZ:  I don't.  So my understanding was that

15   Mr. Lefland was, in fact, representing Mr. Chapman.  This is

16   news to me.

17          THE COURT:  Okay.  So this is how we're going to

18   proceed with Mr. Chapman's responses.

19          It is narrowed to communications relating to this

20   lawsuit and I'm not narrowing the timeframe because even though

21   the lawsuit was commenced in 2018, there may have been

22   communications between then and now, particularly shortly after

23   the lawsuit that was brought, that might be relevant to this

24   case.  I'm going to ask that those documents be produced.

25          Mr. Lefland, you will review them and assist in the

1    transmittal of those documents to the plaintiff.  And if

2    there's anything withheld on attorney-client privilege or

3    attorney work-product privilege, then you need to produce a

4    privilege log setting forth sufficient information for them to

5    understand what has been withheld and the grounds for it to be

6    withheld, so then Mr. Katz can bring that to the Court's

7    attention if he believes it was inappropriately withheld.

8    Okay?

9              MR. LEFLAND:  Yes, your Honor.

10             THE COURT:  Mr. Katz, okay?

11             MR. KATZ:  Yes, your Honor.

12             THE COURT:  So now we have to deal with Pax 10.

13             What do you believe, Mr. Lefland, might be in these

14   documents that would share the personal banking information?

15             MR. LEFLAND:  Possibly checks from -- that my client

16   wrote from his personal account to pay the lease.  This is the

17   landlord.

18             Again, your Honor, this was written, my letter was

19   written objecting to this when the subpoena was first served,

20   and also when my client was out of the country, and I had

21   difficulty communicating with him by email while he was out of

22   the country.  So I haven't been able to speak to him.  That was

23   my only objection, again, that they would be the personal

24   banking information.

25             THE COURT:  But what we're talking about on personal

1    banking information would be a check that had a routing number.

2            MR. LEFLAND:  Yes.

3            THE COURT:  And an account number.

4            MR. LEFLAND:  Correct.

5            THE COURT:  How is that going to reveal anything that

6    plaintiffs could use in a nefarious way?

7            MR. LEFLAND:  Unfortunately, I believe much can be

8    done with just that little bit of information.  The routing

9    number and the account number.  I'm certainly not accusing

10   counsel of anything --

11           THE COURT:  Okay.  So what we're going to do is,

12   we're going to narrow the subpoena and we're going to be

13   forcing Pax 10 to redact any routing information, account

14   numbers on any checks or any documents that they are producing.

15          Otherwise, I don't see any other personal banking

16   information that Pax 10 would have.

17          Do you, Mr. Lefland?

18          MR. LEFLAND:  No, Judge.

19          THE COURT:  Okay.  So Mr. Katz, can you let Pax 10

20   know that they need to redact that information from any

21   documents that they produce?

22          MR. KATZ:  Yes, your Honor.  And in the event they

23   don't, my firm will get the documents first and we'll check it

24   before anyone else sees it and make sure they redact it.

25          THE COURT:  Thank you.

1          Apple Valley Signs, what's the objection to that?

2          MR. LEFLAND:  I believe that's already been responded

3     to.

4          MR. KATZ:  No.

5          MR. LEFLAND:  No?

6          THE COURT:  I thought it was Safe & Sound.

7          MR. KATZ:  It was Safe & Sound.

8          MR. LEFLAND:  I'm sorry.

9          THE COURT:  Yes.

10         MR. LEFLAND:  Again, if my client paid with a

11    personal check from a personal account, as opposed to a

12    business account, same as to the landlord.

13         THE COURT:  Mr. Katz, do you have any objections to

14    the same narrowing for this also which would be any bank

15    routing number, bank account number would be redacted?

16         MR. KATZ:  No, I do not.

17         THE COURT:  Okay.  So if you could let Apple Valley

18    Signs know this also and, again, if Apple Valley Signs fails to

19    redact it, if your firm would redact it, and in the abundance

20    of caution I'm also going to direct that any unredacted forms

21    would not be shared with your client.  Okay?

22         MR. KATZ:  Yes, your Honor.

23         THE COURT:  Thank you.

24         So I think this takes care of docket 30.

25         Docket 33 is plaintiff's request to get books and

1   records of defendant BestLife Gifts and legal and accounting

2   documents of plaintiff's business, Ministry Ideaz.  And I

3   believe they were requested, and I believe defendants have said

4   that they have produced it.  So I'm trying to figure out what's

5   going on here.

6             MR. KATZ:  Your Honor.

7             THE COURT:  Yes.

8             MR. KATZ:  Yes, that was my understanding.  They did

9   say they have produced but we don't have it and it's impossible

10  to believe that these sorts of business records don't exist.  I

11  mean, this is an ongoing business, they're selling things, they

12  should have records of what they did with our inventory, if

13  indeed they sold it, as we believe happened.

14            THE COURT:  Mr. Lefland.

15            MR. LEFLAND:  As I said, I received a letter from my

16  client over the weekend detailing all of the inventory that is

17  still in his possession in storage.  I will gladly give that to

18  Mr. Katz later today.

19            Insofar as records are concerned, it was my

20  understanding from the client that we had given everything.  If

21  there are other books and records that account for your items

22  or the Ministry Ideaz' items, and they haven't been provided,

23  your Honor, I apologize first of all.  And second of all, I

24  will provide them as soon as I get them.

25            THE COURT:  What's your understanding?

                    Angela O'Donnell, RPR, 914-390-4025

 1          Have you re-requested it from your client and waiting

 2     for a response?

 3          MR. LEFLAND:  I spoke to him.  He said that the

 4     records that he has cannot differentiate between what is old

 5     material and what is new material.  That's what he said to me.

 6          THE COURT:  Okay.  So this is what I'm going to do on

 7     this case.  I'm going to direct the parties meet and confer.

 8     I'm going to deny this without prejudice to bring it, but I'm

 9     going to request the parties meet and confer within the next

10     two weeks, so by August 19.  Doesn't have to be in person, but

11     you have to actually talk.  And you'll get this list of

12     inventory, and Mr. Lefland will get more understanding about

13     what he's produced, and then you're going to call Mr. Katz,

14     direct him to the documents you believe are responsive to this,

15     and explain to him why you believe they're responsive so

16     Mr. Katz can determine if he has this information or not, okay?

17          MR. LEFLAND:  Yes, Judge.

18          MR. KATZ:  And your Honor, if I could just mention

19     one more thing.  It's not only the inventory.  We believe that

20     their profits are relevant to proving our damages, because one

21     of the claims here is that they essentially took over our

22     business.  They're in the same store.  They're using our

23     inventory.  They're using the phone number.  So even profits

24     unrelated to the specific inventory of ours that they took are

25     still relevant to proving our lost profits damages.

                    Angela O'Donnell, RPR, 914-390-4025

 1                THE COURT:  If it's inventory that belonged to your

 2      client; right?

 3                MR. KATZ:  Even if it's not, I believe it's still

 4      relevant.

 5                THE COURT:  Why?

 6                MR. KATZ:  Because there's an unfair competition

 7      claim, your Honor, and even if they're not using our specific

 8      inventory, they're using our goodwill.  And that's relevant to

 9      the proving the profits that we would have made had they not

10      improperly ousted us from the business as we allege in the

11      complaint.

12                MR. LEFLAND:  What my clients have is a

13      brick-and-mortar store where people walk in and buy Jehovah

14      Witnesses chachkas.  They're not -- from their online site, my

15      client says that he makes about $850 a month.

16                The claim that we're using his goodwill or unfairly

17      competing, it's specious.

18                THE COURT:  Yes, but we're talking about discovery

19      right now.

20                MR. LEFLAND:  There's very little to discover on

21      those issues.

22                THE COURT:  So maybe he should just produce it and we

23      can move on.

24                MR. LEFLAND:  All right.

25                THE COURT:  Is there a confidentiality order in this

```
 1   case?

 2              MR. LEFLAND:  Yes, Judge.

 3              MR. KATZ:  Yes.

 4              THE COURT:  Okay.  So mark it confidential.  And if

 5   you believe it should be an attorney -- I mean, if you believe

 6   it should be an attorney's eyes only, you know, do you have

 7   that provision under this confidentiality order?

 8              MR. LEFLAND:  We don't, and I thought I did.  I had

 9   produced a guest book that I had asked to be marked attorney's

10   eyes only, and Mr. Calvo wrote back to me and said we don't

11   have that in the --

12              THE COURT:  Okay.  So you can modify it if you

13   believe this is attorney's eyes only.

14              I understand, Mr. Katz, that at some point you may

15   need to talk to your client about this to find out what

16   inventory is such, but I understand that there's a lot of ill

17   will between the parties in this case and a lot of fear that

18   information that's going to be used is going to be misused and

19   used outside of this case.

20              So if this information is such, Mr. Lefland, that you

21   believe should come over as attorney's eyes only initially,

22   that doesn't mean I'm going to keep it that way, but I want to

23   get this stuff into Mr. Katz' hands so he can actually make

24   some decisions about its relevance and can make more cogent

25   arguments to me about why it's relevant in this case and
```

1    shouldn't have attorney's eyes only.  But we can start with an

2    attorney's eyes only provision on it.

3           So if you need to send something to me to modify that

4    protective order, that's fine.

5           You have any problems with that, Mr. Katz?

6           MR. KATZ:  No, that makes perfect sense.

7           THE COURT:  Okay.

8           Now, let's go to the last issue which is -- I think

9    we've resolved all the letters?

10          MR. KATZ:  No, your Honor, there was a second issue

11   in our letter which is the communications with the corporate

12   lawyer and accountant.

13          THE COURT:  Oh, yes.  So I understand McAdam & Fallon

14   was the law firm that dealt with the Ministry Ideaz formation

15   and (indiscernible) dissolution and the legal fees were paid by

16   the plaintiff.

17          So whatever information McAdam & Fallon has that your

18   client, Mr. Katz, had with them, then you're entitled to that

19   from the Ministry Ideaz.  But anything that is related to the

20   current business, that's attorney-client.

21          MR. KATZ:  I agree.  And all we're seeking are the

22   communications regarding his representation of my clients'

23   business, Ministry Ideaz.

24          MR. LEFLAND:  Why can't he ask his attorney for that?

25          THE COURT:  Yeah, I don't understand why you couldn't

1    get that directly from McAdam & Fallon without even a subpoena,

2    just calling them?

3            MR. KATZ:  I understand they're hard to reach and I

4    didn't want to be accused of going behind -- they already

5    objected to it, I didn't want to get an angry letter from them

6    saying, you knew we objected, you knew these were privileged

7    and you went directly to the attorneys so -- but if they're not

8    going to object, well, we'll get --

9            THE COURT:  Well, they're not objecting to Ministry

10   Ideaz' formation of the business relationship, what McAdam did

11   regarding that, but if there's any -- is your client continuing

12   to use this law firm?

13           MR. LEFLAND:  I don't believe so, no, your Honor.

14           THE COURT:  But if there's anything that was

15   subsequent or not related to that that might be privileged, but

16   McAdam & Fallon should know that.  You know, they should only

17   produce that which is directed to your client.

18           So go there first for the conversation and see what

19   happens.

20           MR. KATZ:  And --

21           THE COURT:  Now the accountant, Martin Nowak.

22           MR. LEFLAND:  We have emails, correspondence from

23   Mr. Holland to Mr. Nowak, communicating directly, setting up

24   appointments, making arrangements to have returns done.

25           Again, I don't see why the plaintiff doesn't go

1   directly to him and ask him for information related to the

2   formation of the business and the returns that were filed on

3   behalf of the business.

4        THE COURT:  Now do you know if this accountant is

5   still be used by your client?

6        MR. LEFLAND:  I don't know that.  I will certainly

7   ask.

8        MR. KATZ:  Your Honor.

9        THE COURT:  And again, you were concerned about being

10  accused of --

11       MR. KATZ:  Well, not only that.  I think there's a

12  possession, custody and control issue.  To the extent that they

13  have these in their possession, they should be producing them.

14  I shouldn't have to go to Nowak.  I should only have to go to

15  Mr. Nowak if there's things they don't have.

16       MR. LEFLAND:  Again, Mr. Katz is as entitled as I am

17  to go to Mr. Nowak --

18       THE COURT:  Ministry Ideaz, those documents, why

19  aren't they in your client's possession?

20       MR. KATZ:  Because the defendants managed the

21  business, were handling all the books and records, and my

22  client doesn't have them.  And we understand there's issues

23  with the tax returns that needs to be fixed and we can't fix

24  them without these records.

25       MR. LEFLAND:  Judge, that's simply inaccurate, again.

1          Mr. Holland is the one, through emails, who made the

2     appointments to get the tax returns done, who had

3     correspondence with Mr. Nowak, who is the financial brains of

4     this operation.  My clients will testify clearly and it will be

5     obvious to any jury that they were not the financial brains

6     behind this operation.

7          THE COURT:  Let your client first contact the

8     accountant and try to get documents that are rightfully his.

9          MR. KATZ:  Okay.

10         THE COURT:  And if there's a problem, go to

11    Mr. Lefland, and then if you guys can't resolve it, come back

12    to the Court.

13         So how are we going to deal with the first thing,

14    kind of the elephant in the room?

15         MR. KATZ:  Yes.

16         THE COURT:  Which is -- and Mr. Katz, you might not

17    have had enough time to digest it, because you just heard about

18    it this morning?

19         MR. KATZ:  Correct.

20         THE COURT:  Okay.  Now, if the case goes to

21    bankruptcy, it's going to get stayed, and it will be stayed in

22    this court, and you'd have to make an argument that the

23    individuals, Mr. Matos and I think --

24         MR. LEFLAND:  Nanci Matos.

25         THE COURT:  -- Nanci Matos who should be held

1   individually liable and not be affected by the stay.

2           Because I'm assuming this is a business bankruptcy

3   and not a personal bankruptcy?

4           MR. LEFLAND:  It may be both.  I'm not sure.

5           THE COURT:  Which would stay all of it.

6           MR. KATZ:  Correct.  I know -- I realize if they're

7   going to file, there's nothing I can do about it, but we have

8   depositions scheduled to start the week after Labor Day.  My

9   client and his wife are flying in from British Columbia.  If

10  there's going to be a bankruptcy filing, I would just like to

11  know.  I don't want to have to tell them, oh, you came to

12  New York for nothing, they filed for bankruptcy yesterday,

13  everything's stayed.  That's all I ask.

14          THE COURT:  That's fair.

15          MR. LEFLAND:  It is fair.  I will give him as much

16  notice as I have.  There is also --

17          THE COURT:  So how -- I mean --

18          MR. LEFLAND:  There's also a deposition scheduled for

19  late August in Texas, which is just more financial crunch.

20          THE COURT:  Which is probably what's prompting the

21  expense of what all these depositions coming up is that --

22          MR. LEFLAND:  I wish that was it, your Honor.  My

23  legal bill is outstanding and growing as I speak.

24          THE COURT:  Yes.  The more words you say here, the

25  longer I keep you, the more expensive it is for your client.

1              And is it your understanding, Mr. Lefland, that this

2    is not an idle throwaway comment but a serious -- a serious,

3    this is what we're going to be doing?

4              MR. LEFLAND:  Mr. --

5              THE COURT:  Have they gone so far as to contact any

6    bankruptcy attorneys?

7              MR. LEFLAND:  Not that I know of.  And I know that we

8    can't handle it.  We do bankruptcy work, but we can't handle

9    this, obviously.

10             Mr. Matos is driving a 2006 Yukon on which he has a

11   loan.  The car is under water.  That's a glimpse of his

12   financial picture at this point.  There's my outstanding legal

13   bill.  And I don't know whatever financial problems he has

14   but --

15             THE COURT:  Is the business still in operation?

16             MR. LEFLAND:  Yes.  He's -- well, I don't want to say

17   too much.

18             THE COURT:  No.

19             MR. KATZ:  Your Honor, I mean this may be an issue

20   for the (indiscernible) but from our records alone, there's

21   almost $400,000 worth of sales receipts and inventory that they

22   got from Ministry Ideaz.  I understand that they're now

23   claiming not to have any money, but I just wanted to point that

24   out that they have almost $280,000 in inventory.  I understand

25   now they say they didn't sell it, they still have it.

1            THE COURT:  Is there any way you can resolve this

2    case?

3            MR. LEFLAND:  I did speak to my client about that and

4    if we want to go off the record, perhaps your Honor, and I

5    suggested that in my letter, an off-the-record settlement

6    conference might go some way.

7            I would also bring up one other issue since you

8    mentioned inventory.  We served a notice for discovery of

9    documents.  There's a $300,000 claim here.  There's a

10   million-dollar claim here.  I served a demand for discovery of

11   documents relating to both those claims in late April, and the

12   response from counsel was that we would get the documents.

13   They will search for the documents.

14           So I have no idea what they base their financial

15   damages on at this point.

16           MR. KATZ:  Your Honor, it's not fair to spring this

17   on me.  I don't even know what Mr. Lefland is talking about.

18   But if there is an issue, always happy to meet and confer.

19           THE COURT:  Okay.

20           We are going to go off the record for a moment.

21           (Discussion off the record)

22           THE COURT:  Okay.  So we've just spoken briefly off

23   the record regarding potentially settling this case.  I spoke

24   to Mr. Lefland in private about some concerns that would

25   warrant a settlement in this case.  I do want to kind of close

1    with how we began, which is, the defendants are contemplating

2    bankruptcy, both personally and for the business, which would

3    affect the outlook of this case.  Mr. Lefland has represented

4    to the Court and to Mr. Katz that his bill is outstanding and

5    he may be moving to be relieved as counsel.

6            So at that point this case would probably be stayed

7    for 30 to 60 days, depending on what Judge Karas grants in

8    order to give the defendants time to find new counsel.

9    Defendants are both personal individuals and a business.  The

10   business cannot represent itself.  So they will have to find

11   counsel to represent them.

12           My understanding both of this case and my experience

13   with these types of situations, is that if what's setting forth

14   the bankruptcy is the lawsuit and the legal fees, then this is

15   a prime time to resolve it in order to have the plaintiffs get

16   something out of the case.  If they're going to go into

17   bankruptcy, no matter what, unfortunately, I think plaintiff's

18   hands may be tied.

19           So those are some conversations that have to be had

20   amongst the parties and amongst counsel for the parties.  So

21   talk in the next two weeks.  Let the Court know in two weeks

22   whether you need a settlement conference, even faster than

23   that, because I won't be able to get you in if I don't hear

24   from you soon.  But also if there's anymore discovery disputes

25   that need to be talked about.

1          I think we're going to put a telephone call for the

2     first week of September.  And again, you've got depositions

3     coming up.  Going to Texas at the end of this month.  You've

4     got a bunch of depositions September.  You have to resolve this

5     stuff quickly before you spend more money that the parties may

6     not have.

7          Ms. Hummel, what am I looking for?  Do I have

8     anything or am I already booked up that week?

9          THE CLERK:  You can do the 4th at 10:30.

10         THE COURT:  That's Wednesday, September 4th at 10:30?

11         MR. KATZ:  Is that telephonic?

12         THE COURT:  Yes.

13         MR. KATZ:  That works for us, your Honor.

14         MR. LEFLAND:  Can we make it later in the day

15     perhaps?

16         THE COURT:  Doesn't look like I can do that day much

17     later.

18         MR. LEFLAND:  Because I already have something.

19         THE COURT:  Okay.  We can look at another date.  That

20     day looked bad anyway.

21         THE CLERK:  We can do the 3rd at 10:30 or 11:30.

22         MR. LEFLAND:  11:30 on the 3rd, works for me.

23         THE COURT:  Does that work for you, Mr. Katz?

24         MR. KATZ:  Yes, your Honor.

25         THE COURT:  Okay.  I expect to hear from you before

                    Angela O'Donnell, RPR, 914-390-4025

```
 1    then, though, kind of what's going on.  Really, don't have
 2    people travel and spend attorney money.  Don't keep flushing
 3    good money over bad is a mistake and try to figure out what's
 4    going on.
 5              And if you need the Court's assistance before the
 6    3rd, let me know.
 7              MR. LEFLAND:  Thank you very much.
 8              MR. KATZ:  Thank you.
 9              MR. LEFLAND:  Appreciate your help, your Honor.
10              THE COURT:  Thank you.  Have a good day.
11              MR. KATZ:  Thank you, your Honor.
12              (Proceedings concluded)
13    Certified to be a true and accurate
      transcript of the digital electronic
14
      recording to the best of my ability.
15

16    _____

17    U.S. District Court

18    Official Court Reporter

19

20

21

22

23

24

25
```

Angela O'Donnell, RPR, 914-390-4025