UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREG HOLLAND,

                Plaintiff,

      v.

THOMAS MATOS, NANCI MATOS and
BESTLIFE GIFTS LLC,

                Defendants.

18 Civ. 6697 (KMK) (JCM)

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

 

Muñoz-López & Associates PLLC
Luis F. Calvo
1140 Avenue of the Americas, FL 9th
New York, NY 10036
(646) 512-5847
luis@munoz-lopez.com

and

Kent, Beatty & Gordon, LLP
Joshua B. Katz
Eleven Times Square
New York, New York 10036
(212) 421-4300
jbk@kbg-law.com

*Attorneys for Plaintiff Greg Holland*

1

# **TABLE OF CONTENTS**

I.    Findings of Fact ................................................................................................................. 1

    A.    The Parties Establish the Ministry Ideaz Store in Pine Bush, New York ................ 1

    B.    The Matoses Take Advantage of Turmoil in Holland's Personal Life to Misappropriate Company Assets For Their New Business ..................................... 3

    C.    The Matoses Procure the March 5th Agreement Through Extortion and Duress ........................................................................................................................ 5

II.    Conclusion of Law ............................................................................................................ 7

    A.    The Matoses Breached the Operating Agreement .................................................... 7

    B.    The Matoses Breached Their Fiduciary Duties as Managers of the LLC ................ 7

    C.    Holland is Entitled to Production of All Ministry Ideaz Books and Records and an Accounting from the Matoses ....................................................................... 8

    D.    The Matoses Are Liable for Unfair Competition ...................................................... 9

    E.    The March 5th Agreement is Null and Void .......................................................... 10

Plaintiff Greg Holland ("Holland") respectfully submits these proposed findings of fact and conclusions of law.

## I. Findings of Fact

1. Holland and the defendants, Thomas Matos ("Mr. Matos") and Nanci Matos ("Mrs. Matos," and together with Mr. Matos, the "Matoses"), were the members of Ministry Ideaz LLC ("Ministry Ideaz"), a now-dissolved New York limited liability company. Holland commenced this action in July 2018 alleging breaches of contract and fiduciary duty arising from the following facts.

### A. The Parties Establish the Ministry Ideaz Store in Pine Bush, New York

2. In or around 2002, Holland founded Ministry Ideaz (Ecuador) as a sole proprietorship in Ecuador where he was living at the time. Ministry Ideaz (Ecuador) manufactures and sells religious-themed goods to the Jehovah's Witness community world-wide, principally through its website www.ministryideaz.com.

3. After years of customer demand for a brick-and-mortar storefront, in early 2017 Holland decided to open one near the Church's headquarters in Wallkill, New York, to cater to the many visitors it receives. (Mrs. Matos dep., 37:11-24; 38:18-21).

4. In or around April 2017, Katherine Moeckel ("Moeckel"), Holland's friend and intermittent employee, introduced Holland to the Matoses. (Mrs. Matos dep., 37:11-24). At the time, the Matoses were volunteering at the Jehovah's Witness headquarters but lacked regular employment. (Mrs. Matos dep., 50:19-25; 51:2-19). Holland trusted and agreed to partner with the Matoses because of their mutual friend, Moeckel, and membership in the same Jehovah's Witnesses Church and community. The Matoses agreed to open and operate a Ministry Ideaz store for which they would each be paid $25 an hour. (Mrs. Matos dep., 44:6-19).

1

5. In May 2017, the Matoses began searching for store locations and hired an attorney to form Ministry Ideaz. (PX10 and PX42). They ultimately settled on a retail space in Pine Bush, New York. (PX5).

6. When Ministry Ideaz was formed, the Matoses told Holland that the LLC's attorney had advised that Holland, as a non-U.S. citizen or resident, could not be the sole member of the LLC or open bank accounts for the business. PX4 at Holland0002489-91. Thus, the Matoses proposed to become members of the LLC with a 10% membership interest, but with the understanding that, as they put it, "[t]he split of 90% to 10% [was] strictly for the sake of the company name!," and that their hourly pay would be their only compensation for this venture. *Id.*; (Mrs. Matos dep., 82:11-16.)

7. The Matoses did not contribute any capital to Ministry Ideaz. (Mrs. Matos dep., 68:11-13.) All funds to form the entity and establish the storefront came from Holland. (Mrs. Matos dep., 70:19-24.)

8. From May 5, 2017, through June 22, 2017, Holland wired $57,162.64 to the Matoses (exclusive of their hourly wages) for expenses to open the store, including hiring an attorney and building out the Pine Bush space. PX 224B.

9. Additionally, from May 2017 through February 2018, Holland shipped more than $207,000 worth of inventory to stock the New York store, infused an additional $55,400 in cash, and paid at least $36,653.43 to cover various Ministry Ideaz expenses. PX 224B.

10. The Matoses ran the store's day-to-day operations, including receiving inventory shipments, tagging items, stocking shelves, paying ordinary business expenses, maintaining bank accounts, and keeping the company's books and records.

11. On July 3, 2017, the Ministry Ideaz store opened to the public. The store was an instant success. From July 2017 through October 2017 alone, the store's revenues totaled at least $289,901, or an average of over $72,000 per month. PX224A.

12. The Matoses were responsible for processing all sales transactions in the store and accepting all payments, including cash sales. At Holland's direction, the Matoses opened an account on behalf of Ministry Ideaz at TD Bank. PX 12. The Matoses were entrusted to deposit all cash sales into the company's TD Bank account. However, the Matoses deposited only $34,598.59 in cash sales proceeds, even though the business had more than $100,000 in cash sales. *Id.* On November 2, 2017, the Matoses opened a second Ministry Ideaz bank account without Holland's knowledge and used it to deposit at least $69,655.39 in cash sales. PX 219 at Walden000031-32. Matoses never granted Holland access to this account.

13. At the same time they were running the store, the Matoses also became close with Holland, his wife Jade Holland, and their two children, and the Matoses hosted the Holland family during an extended visit to Pine Bush in August and September 2017.

14. During this period, Holland also repeatedly asked the Matoses for an accounting of their spending, including basic documents such as receipts and online access to the company's bank account. The Matoses repeatedly demurred and delayed and ultimately were unable to account for their spending of LLC funds.

  **B. The Matoses Take Advantage of Turmoil in Holland's Personal Life to Misappropriate Company Assets For Their New Business**

15. Matters came to a head in November 2017 when Holland was hospitalized in a coma for several days, following a drug overdose during an extramarital affair in Ecuador. The Matoses capitalized on the extreme stress this placed on Holland his family to continue their theft of Ministry Ideaz assets. First, the Matoses began driving a wedge between Holland and his wife.

While Holland was in a coma and hospitalized, the Matoses cajoled Holland's wife, Jade, into hiding Holland's computer from him and taking possession of all passwords and bank account login information. Mr. Matos then told Mrs. Holland to "cut your ties as completely as possible and let the lawyers figure out how much money they can get from him for you." PX 32 at Holland005499.

16. On December 12, 2017, Mr. Matos confided to Moeckel that "I'm still pretty angry about everything that's going on, but I need to tone it down a little bit. Whatever I'm going to do I just need to do I don't need to involve anyone to announce it to [Holland] or to anyone else I will personally deal with him myself[.]" PX 30 at MATOS002440. At the same time, the Matoses offered Holland feigned emotional support and assured him that he need not worry about business because the store was in their "good hands."

17. Second, the Matos Defendants took steps to form their own business using Holland's customers list, inventory, and goodwill. On January 15, 2018, at Mr. Matos' request, Amy Holland, Holland's sister and employee, sent Mr. Matos a file containing an email list of over 200,000 online customers of Ministry Ideaz (Ecuador). PX37; Mr. Matos dep., 224:4-21; 225:17-24)

18. The Matoses then began transferring funds from the Ministry Ideaz account to their personal accounts without Holland's authorization (Mrs. Matos dep. 315:2-25; 316:2-18.). From November 28, 2017, through March 2018, the Matoses diverted over $66,000 from Ministry Ideaz accounts to their own accounts or accounts that only they controlled. PX 224A. Holland later pleaded with the Matoses to account for the substantial sums that they withdrew from company accounts in November and December 2017. PX 31. Mr. Matos promised to deliver an accounting, but failed to do so.

19. On January 29, 2018, without telling Holland, the Matoses Matos started a new company called BestLife Gifts, LLC, and listed Ministry Ideaz's address as the legal address of his new entity. On March 1, 2018, without informing Holland, Defendants removed Ministry Ideaz's sign from the Pine Bush store. PX 36.

### C. The Matoses Procure the March 5th Agreement Through Extortion and Duress

20. Without warning, on March 2, 2018, Thomas Matos sent Holland the following e-mail:

> [W]e are severing ties!…The store sign has been removed, the lease has ended, utilities, phones and internet canceled and all Clovers shut down.…
> Bear in mind that the store is gone, our conversation must focus on division of assets and moving forward.

PX 35.

21. As an attachment to his e-mail, Mr. Matos provided a copy of a "Special Meeting" of Ministry Ideaz LLC purportedly held on March 2, 2018 at the Matoses' home in Pine Bush. With only Thomas and Nanci Matos present (representing only 10% of the company's membership interests), they approved the following resolutions:

> 1) Payment of Quarterly Sales Tax;
> 2) Disconnect [*sic*] of utilities;
> 3) Terminate "Ministry Ideaz LLC" lease;
> 4) Dissolution of Ministry Ideaz LLC; and
> 5) Storage of Ministry Ideaz assets.

PX 35.

22. Holland was never notified of the "Special Meeting," which was conducted without his knowledge.

23. By that time, Mr. Matos had obtained only Holland's customer list with over 200,000 names and emails (PX37), but also his confidential medical records from his hospitalization in Ecuador. With this information in hand, on March 5, 2018, Mr. Matos spoke by

5

phone with Holland. (Mr. Matos dep., 213:15-18). Mr. Matos threatened Holland that he would contact the over 200,000 Ministry Ideaz (Ecuador) customers and disclose embarrassing details about his hospitalization. Mr. Matos also threatened not to process approximately one thousand online orders, which the Matoses had received in inventory in Pine Bush and were supposed to ship to the customers.

24. Mr. Matos offered that if Holland signed over his interest and inventory in Ministry Ideaz to Defendants, they would refrain from contacting Holland's 200,000 customers, and would continue to process orders for Ministry Ideaz (Ecaudor) through the end of 2018. At that time, the Ministry Ideaz inventory was worth as least $80,000. (Mr. Matos dep., 215:12-15). Fearful that Mr. Matos would follow through on his threats, Holland felt he had no choice but to accept.

25. Thus, on March 5, 2018, the parties signed a one-page "agreement" drafted by Mr. Matos, stating:

> It is agreed that Ministry Ideaz LLC is dissolved.
>
> Regarding the office equipment and existing Ministry Ideaz LLC inventory Greg Holland agrees to transfer his portion of ownership to Thomas Matos and Nanci Matos.
>
> In return Thomas and Nanci Matos agree to accept and process Ministry Ideaz online sales packages for a period of time ending on Dec. 31st 2018.
>
> It is also agreed that as further compensation for existing inventory Thomas and Nanci Matos will also accept, process and deposit return checks for Ministry Ideaz into an existing TD Bank account accessible Greg Holland. [*sic*]
>
> Thomas and Nanci Matos also agree to direct any incoming calls searching for Ministry Ideaz Online business to 1-877-446-0784.
>
> As of the signing of this agreement any money entering the said TD account will be the sole possession of Greg Holland and Ministry Ideaz.

PX 41.

26. The Matoses then rebranded the Pine Bush store as BestLife Gifts and began selling Ministry Ideaz's remaining inventory.

27. The Matoses' new business (BestLife Gifts) shared the same success as Ministry Ideaz. From March 5, 2018, through December 31, 2018, BestLife Gifts had $404,010.20 in gross in-store sales, including $121,486.75 in cash sales, with the additional $126,660.80 from online sales. PX25 at MATOS_008180; PX236. In 2019, BestLife Gifts had in store sales of $530,723.43, of which $146,399.85 were cash receipts. PX 237. PayPal records show that BestLife Gifts sold at least $17,878 to Holland's pre-existing customers. PX 223 and 224A.

## II. Conclusion of Law

### A. The Matoses Breached the Operating Agreement

28. Pursuant to the Operating Agreement, the Matoses were required to manage Ministry Ideaz's day-to-day operations and maintain the books and records. The Matoses breached the Operating Agreement by failing to properly manage the store, including by misappropriating cash and other assets, and by failing to maintain accurate books and records.

### B. The Matoses Breached Their Fiduciary Duties as Managers of the LLC

29. As managers and members of the LLC, the Matoses owed duties of loyalty and care to Holland and Ministry Ideaz. The duty of loyalty requires a fiduciary to refrain from self-dealing and avoid situations where his "personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989). Pursuant to the duty of care, a fiduciary must perform his duties "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." N.Y. Ltd. Liab. Co. Law § 409. A fiduciary must also "make full disclosure of all material facts" to his principal. *Salm v. Feldstein*, 20 A.D.3d 469, 799 (2d Dep't 2005).

30.     The Matoses breached their fiduciary duties by, *inter alia*, misappropriating at least $150,745.24 in Ministry Ideaz funds, surreptitiously establishing a competing business while still ostensibly managing Ministry Ideaz, and misappropriating Ministry Ideaz's inventory, storefront, customer list and goodwill for the benefit of BestLife Gifts.

### C.   Holland is Entitled to Production of All Ministry Ideaz Books and Records and an Accounting from the Matoses

31.     Section 1102 of the New York Limited Liability Company Law provides: "Any member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonably related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable."

32.     An LLC member is also entitled to seek an equitable accounting under New York common law. *Gottlieb v. Northriver Trading Co. LLC*, 58 A.D.3d 550, 551 (2009). "To be entitled to an equitable accounting, a claimant must demonstrate that he or she has no adequate remedy at law" *Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568, 569 (1st Dept. 2011).

33.     Holland has made repeated requests to the Matoses for productions of Ministry Ideaz's books and records to track down missing company funds. PX 248, PX92 and 102. To date the Matoses have refused to properly account for the funds withdrawn from Ministry Ideaz's accounts or the cash proceeds from store sales. As a result of the fiduciary relationship between Holland and the Matoses and the latter's inability to provide for an accounting and access the Ministry Ideaz books and records, Holland is entitled to an accounting. *Atlantis Mgmt. Grp. II LLC v. Nabe,* 177 A.D.3d 542, 543 (2019).

### D. The Matoses Are Liable for Unfair Competition

34. "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (quotation omitted). "New York's law of unfair competition is a broad and flexible doctrine that depends more upon the facts set forth than in most causes of action. It has been broadly described as encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person .a benefit or property right belonging to another." *Id*. at 197-98 (cleaned up).

35. Here, in their capacity as managers and fiduciaries, the Matoses misappropriated Holland's list of online customers of Ministry Ideaz (Ecuador), which Holland had amassed from over 15 of doing business. The Matos Defendants do not allege the list was not known outside the business or that Holland failed to take measures to product it from competitors. *See* Restatement of Torts § 757, comment b stating that in deciding trade secret claims, courts should consider the following facts: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

36. Rather, Mr. Matos believed that the customer list containing 200,000 customers was his because it was on his computer, it belonged to him; he had a right to access it and right to

use it as he saw fit. Mr. Matos dep., 224:4-21; 225:17-24). Sales to those customers resulted in in at least $17,878 in sales in 2018 and 2019. As such, there is no doubt that Mr. Matos used Holland's proprietary customer list for his future business purposes and that Holland was damaged as a result.

        **E.**        **The March 5th Agreement is Null and Void**

37. The March 5th Agreement was procured by duress, undue influence and extortion. Accordingly, Holland is entitled to a judgment declaring it null and void. "A contract, [], is voidable if it is a product of fraud, duress, mistake or infancy." *Landau v. Am. Int'l Grp., Inc.*, No. 97 CIV. 3465 (LMM), 1997 WL 590854, at *3 (S.D.N.Y. Sept. 23, 1997), *order clarified*, No. 97 CIV. 3465 (LMM), 1998 WL 26196 (S.D.N.Y. Jan. 23, 1998), and aff'd, 164 F.3d 618 (2d Cir. 1998) (citation omitted)).

38. Under New York law, duress requires "(i) a threat, (ii) unlawfully made, (ii) which caused involuntary acceptance of contract terms (iv) because the circumstances permitted no other alternative." *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989). Here, all elements are present. Prior to the March 5th Agreement, Mr. Matos emailed Holland, out of the blue, to tell him that the Ministry Ideaz store was closed and Mr. Matos and wife (representing 10% of the LLC's ownership) had unilaterally decided to dissolve the company. More importantly, Mr. Matos made clear that "the store is gone, our conversation must focus on division of assets and moving forward." PX 35. Mr. Matos then continued: "I hope that you take time and prepare yourself so that we may have calm and productive conversation! A harsh and disagreeable meeting will only serve to further damage both of us as we move forward separately in business! " *Id.* Mr. Matos then attached a copy of the Special Meeting of Ministry Ideaz wherein they voted to dissolve the corporation. Finally, Mr. Matos annexed pictures which he claimed showed that the Ministry Ideaz sign had been removed and all inventory placed in storage.

39.     Naturally at this point Holland knew the minority owners had decided, without his vote, to dissolve the LLC.  Three days later, Holland and Mr. Matos spoke by phone.  During that conversation, Mr. Matos made clear that he had a list of Holland's 200,000 customers and would contact them about Holland's hospitalization and marital troubles, and also threatened not to process time-sensitive customer orders and returns. Holland was devastated and felt as if he had no choice but to sign whatever document Mr. Matos proposed to end the relationship.

40.     Alternatively, Holland is entitled terminate the March 5th Agreement because the Matoses materially breached by failing to process online orders for Holland or direct customer inquiries to the phone number for Ministry Ideaz (Ecuador).

Dated: New York, New York
November 22, 2021

MUÑOZ-LÓPEZ & ASSOCIATES PLLC

/s/*Luis F. Calvo*
Luis F. Calvo
1140 Avenue of the Americas, FL 9th
New York, NY 10036
(646) 512-5847
luis@munoz-lopez.com

*/s/Joshua B. Katz*
Joshua B. Katz
Kent, Beatty & Gordon, LLP
Eleven Times Square, 10th Floor
New York, New York 10036
Phone: (212) 421-4300
Fax: (212) 421-4303
jbk@kbg-law.com

*Attorneys for Plaintiff
Greg Holland*